IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BEAU HAWKES, | Case No. 25-cv-00229-DKW-KJM |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**[1] |
| vs. | |
| TRINIDAD ALCONCEL, *et al.*, | |
| Defendants. | |

On June 20, 2025, Defendant Maui Police Department ("MPD") filed a motion to dismiss *pro se* Plaintiff Beau Hawkes' Amended Complaint. Dkt. 12. On July 23, 2025, Defendants Trinidad Alconcel, Gregory Boteilho, Brenden Fujii, James Kahuhu, Keola McKee, Lean J. Gumboc, Jhun-Lee Casio, Bryan Manlapao, Kyle Nagano, and Jerry Barrera (the "Officer Defendants") joined MPD's motion. Dkt. No. 43. Hawkes opposes the motion, Dkt. No. 47, and Defendants have replied, Dkt. No. 49.

Having reviewed the Amended Complaint, the parties' briefs, and the relevant legal authorities, the Court agrees that dismissal is appropriate. Accordingly, the motion to dismiss is GRANTED with partial leave to amend, as described below.[2]

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

[2]Hawkes has filed two motions requesting a hearing to discuss the motion to dismiss. Dkt. Nos. 52 & 55. Because Hawkes' only basis is the need to explain his opposition to the motion to

## FACTUAL & PROCEDURAL BACKGROUND

I.    **The Amended Complaint**

On May 20, 2023, Hawkes was involved in a dispute with a business owner concerning QR code signs he posted in the nearby neighborhood and which had gone missing.  Dkt. No. 12 ¶¶ 23–24.  Hawkes, filming the encounter, asked the owner if he had seen the missing signs; in response, the owner ordered Hawkes to leave his property and threatened him.  *Id*. ¶ 25.  The owner then "initiated a physical assault" on Hawkes, "pushing and strangling him," while Hawkes, in turn, "defended himself by lawfully deploying a legal Byrna pepper-ball launcher."  *Id*. ¶¶ 26, 43.

Alconcel, an MPD officer, arrived at the scene.  *Id*. ¶¶ 27–28.  Alconcel confiscated the pepper-ball launcher and placed Hawkes in a police car.  *Id*. ¶ 30.  Shortly after, Kahuhu, McKee, Fujii, and Boteilho—also MPD officers—arrived.  *Id*. ¶¶ 31–34.  Hawkes was then placed under arrest for assault.  *Id*. ¶ 36.  The responding officers failed to accurately describe the confrontation between Hawkes and the business owner, ignoring the recorded footage pointing to the owner as the aggressor.  *Id*. ¶¶ 49–55.  Fellow MPD officers Gumboc and Barrera performed a follow-up in which they similarly mischaracterized the encounter in their reports, *id*.

---

dismiss, something that his brief should have already done, and because the Court requires no further information to adjudicate the motion, Hawkes' requests for a hearing are DENIED.

¶¶ 56–58, as did Casio (assigned to the case by his supervisor, Manlapao) when he prepared his own report, *id*. ¶¶ 64–66.

On June 9, 2023, Hawkes was charged with two counts of assault. *Id*. ¶ 67. On December 6, 2023, the charges were dismissed without prejudice. *Id*. ¶ 69. On January 26, 2024, a grand jury—acting on misleading testimony from Alconcel—indicted Hawkes on "two counts of Assault in the Second Degree and one count of Terroristic Threatening." *Id*. ¶¶ 72–75. On January 29, 2024, Hawkes was arrested. *Id*. ¶ 76. On December 10, 2024, the case was dismissed "due to prosecutorial misconduct during the Grand Jury Hearing." *Id*. ¶ 79.

## II.    Procedural History

On May 19, 2025, Hawkes initiated this action in Hawai'i state court. Dkt. No. 1-1. On June 2, 2025, the action was removed to this Court by MPD. Dkt. No. 1. On June 17, 2025, Hawkes filed the operative Amended Complaint. Dkt. No. 10.

Hawkes' Amended Complaint asserts various claims pursuant to 42 U.S.C. § 1983 against the Officer Defendants, in their official and individual capacities. *See* Dkt. No. 10. In addition, Hawkes asserts, as relevant here, a municipal-liability claim against the MPD pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978), a Section 1983 supervisory-liability claim, and a conspiracy claim pursuant to 42 U.S.C. § 1985.[3]  *Id.*

On June 20, 2025, MPD moved to dismiss the Amended Complaint, arguing that (1) Hawkes' official-capacity claims against the Officer Defendants are duplicative; (2) Hawkes failed to state Fourteenth Amendment claims under Section 1983 or conspiracy claims under Section 1985; and (3) Hawkes fails to state a *Monell* or supervisory liability claim.[4]  Dkt. No. 12.  On July 23, 2025, the Officer Defendants joined the motion to dismiss.  Dkt. No. 43.

On September 8, 2025, Hawkes filed a motion to amend, in which he (1) proposed striking his official-capacity claims; and (2) clarified his other federal claims[5] while arguing against the motion to dismiss.  Dkt. No. 47.  The Court

---

[3]The Amended Complaint also lists "John Does 1–100" as well as "Doe Corporations" and "Doe Governmental Agencies" (the "Doe Defendants") as Defendants, without elaboration.  Dkt. No. 10 ¶ 14.  Defendants argue that Hawkes fails to state a claim against the Doe Defendants and move to dismiss.  Dkt. No. 6–7.  In his opposition brief, Hawkes states his wish to withdraw his claims against the Doe Defendants, with the caveat that he may wish to add additional defendants in the future.  Dkt. No. 47 at 5.  In light of this, the claims against the Doe Defendants are dismissed without prejudice.

[4]Defendants do not move to dismiss Hawkes' other claims, which include violations of the Fourth Amendment under Section 1983, malicious prosecution, false arrest, intentional and negligent infliction of emotional distress, and negligence.  *See generally* Dkt. Nos. 10 & 12.  Accordingly, the Court does not address them at this time.

[5]At various points, Hawkes attempts to elaborate on the basis for his claims in his opposition brief.  *See generally* Dkt. No. 47.  Typically, in assessing a motion to dismiss, courts will not consider facts raised for the first time outside of a plaintiff's complaint.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[I]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis omitted)).  Here, the Court will address Hawkes' supplemental allegations for the sake of completeness, and in the interest of clarifying his claims should he choose to amend his complaint.  *See Sills v. Kim*, 2024

construed this motion as Hawkes' opposition to the motion to dismiss and directed a response.  Dkt. No. 48.  On September 23, 2025, Defendants replied, arguing that Hawkes' clarifications still failed to state a claim.[6]  Dkt. No. 49.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

_____

WL 3274292, at *2 (D. Haw. July 1, 2024) (noting that courts may consider facts first-raised in opposition papers "in assessing whether further leave to amend might be warranted").

[6]In their reply brief, Defendants further argued that qualified immunity would shield the Officer Defendants from liability from Hawkes' Fourteenth Amendment claims.  Dkt. No. 49 at 7–8.  Because, as noted below, the Court dismisses these claims on other grounds, it is unnecessary to address the qualified-immunity argument at this time.

defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted). "[T]he rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant." *Id.* at 1131 (citation and internal quotation marks omitted). However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court liberally construes a pro se pleading. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542

U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Before the Court is Defendants' motion to dismiss.  Dkt. No. 12.  The Court addresses each of the motion's arguments below.

## I.    Official Capacity Claims

Defendants argue that Hawkes' claims against the Officer Defendants in their official capacities are duplicative of his claims against MPD and should therefore be dismissed.  Dkt. No. 12 at 6.  The Court agrees.  An official-capacity claim is treated as a claim against the governmental entity of which an official is an agent, because "the entity's policy or custom must have played a part in the violation of federal law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted); *see also Kentucky v. Graham,* 473 U.S. 159, 166–67 n. 14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief.").   Unlike individual-capacity claims, which seek personal liability upon a government officer, "official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself" and "generally represent merely another way of pleading an action against

an entity of which an officer is an agent." *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) (internal quotation marks omitted).

Hawkes' official-capacity claims are therefore duplicative of his claims against the MPD and must be dismissed. *See Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 947 (D. Haw. 2004) (granting motion to dismiss because official-capacity claims against officer-defendant "duplicate[d] the claims" asserted against the municipality that employed him). Because amendment would not cure this defect and would therefore be futile, Hawkes' official-capacity claims against the Officer Defendants are dismissed with prejudice. *See Jass v. CherryRoad Techs., Inc.*, 449 F. Supp. 3d 923, 941 (D. Haw. 2020) ("Dismissal without leave to amend is appropriate where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." (internal quotation marks omitted)).

## II.    *Monell* Claim

Defendants argue that Hawkes' *Monell* claim against the MPD should be dismissed for failure to state a claim. Dkt. No. 12 at 8–12. The Court again agrees.

In *Monell*, the Supreme Court concluded that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by

that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690-691.  In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v, Harris*, 489 U.S. 378, 388 (1989).  A municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff may allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").  In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013).  Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well

settled" it operates with the force of law.  *Monell*, 436 U.S. at 691 (internal quotation marks omitted).    Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants.  *Canton*, 489 U.S. at 388.  In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employees to commit the constitutional deprivation.  *Id.* at 391; *Monell*, 436 U.S. at 694.

Here, Hawkes has not come close to meeting the requirements of *Monell*.  The Amended Complaint alleges that the MPD "maintained an official policy or custom which amounts to deliberate indifference to [] constitutional rights," but only in the most broad and conclusory fashion.  Dkt. No. 10 ¶ 148.  No policy or custom is identified or described, no ratification is alleged, and no causation element is offered.  Hawkes' opposition brief provides no further detail.  *See generally* Dkt. No. 47.  Further, while Hawkes briefly mentions the "failure to train" officers in his Amended Complaint, *see* Dkt. No. 10 ¶ 162, he again provides no detail.  Beyond this conclusory statement, Hawkes gives no indication as to how training was lacking, how additional training would matter, or what measures MPD failed to take in training officers.  Merely repeating the language of a *Monell* claim is not enough to state one, nor is it enough to survive the present motion to dismiss.  *Ashcroft*, 556 U.S. at 678; *see Lorinc v. City & Cnty. of Honolulu*, 2023 WL 130762, at *4 (D.

Haw. Jan. 9, 2023) (granting motion to dismiss where plaintiff failed to allege any policy, custom, or ratification pursuant to *Monell* beyond conclusory statements).

Accordingly, the Court grants the motion to dismiss with respect to Hawkes' *Monell* claims.[7]  Because Hawkes "could conceivably cure these deficiencies," and in light of his *pro se* status, the dismissal is without prejudice and with leave to amend.  *Jones v. Rising Phoenix Holdings Corp.*, 2025 WL 2802180, at *7 (D. Haw. Oct. 1, 2025); *Lopez*, 203 F.3d at 1130.

## III.    Supervisory Liability

Defendants argue that, to the extent Hawkes asserts a supervisory-liability claim under Section 1983, that claim must be dismissed.  Dkt. No. 12 at 11 n.6.  The Court agrees.

There is no *respondeat superior* liability under Section 1983.  *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  Instead, a supervisor may be held liable for a subordinate's constitutional violations "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (internal quotation marks and citation omitted); *Watkins v. City of Oakland*, 145 F.3d 1087,

---

[7]To the extent Hawkes attempts to bring any of his other Section 1983 claims directly against the MPD separate from his *Monell* claim, they are dismissed with prejudice and without leave to amend.  *See Hyer v. City & Cnty. of Honolulu*, 2020 WL 7038953, at *12 (D. Haw. Nov. 30, 2020) ("It is well established that the only basis for a plaintiff to bring a Section 1983 claim against a municipality is pursuant to *Monell*.").

1093 (9th Cir. 1998) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.").

Here, Hawkes fails to provide any detail as to his supervisory-liability claim. The Amended Complaint refers only to the "Supervisor Defendants" being liable, without specifying which of the Officer Defendants is actually at issue or what they did that amounts to a constitutional violation. Dkt. No. 10 ¶¶ 156–164. It is possible that Hawkes refers to Manlapao, whom he identifies as "the supervisor." *Id*. ¶ 54. This statement alone, however, is not enough to establish that Manlapao acted in a supervisory role for the purposes of Section 1983. *See Hernandez v. Gates*, 100 F.Supp.2d 1209, 1218 (C.D. Cal. 2000) ("To succeed on a claim of supervisory liability, plaintiff must establish that defendants were directly responsible for overseeing the performance of the wrongdoer."). Even if the Court assumed that Manlapao met the criteria of a supervisor, Hawkes offers no substantive allegations concerning Manlapao's participation in or awareness of any constitutional deprivation. Hawkes' only mention of Manlapao's involvement are that Alconcel "communicated case details" to him, and that Manlapao appointed Casio to a follow-up investigation of Plaintiff. *Id*. ¶¶ 54, 64. These facts do not demonstrate a Section 1983 violation.

As such, Hawkes fails to state a claim for supervisory liability under Section 1983.  Because it is possible that he could provide the necessary details, the Court grants dismissal without prejudice and with leave to amend.

## IV.    Fourteenth Amendment Claims Against Officer Defendants

Defendants identify and move to dismiss two Fourteenth Amendment claims under Section 1983 brought in the Amended Complaint against the Officer Defendants: an equal protection claim, and a due process claim.  Dkt. No. 12 at 11–12.  The Court agrees that dismissal is necessary for both.

### a.    Equal Protection

Hawkes briefly states in his Amended Complaint that Defendants violated his right to "equal protection under the law," without elaboration.  Dkt. No. 10 at ¶¶ 85, 93–94.  Defendants argue that, to the extent Hawkes seeks to advance an equal protection argument under the Fourteenth Amendment, he fails to state a claim.  Dkt. No. 12 at 12–13.  The Court agrees.

As a general matter, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998).  Hawkes' cursory remarks in his Amended Complaint do not come close to making such a showing.  Hawkes states only that

Defendants were "motivated by racial, class-based, or other discriminatory animus," with no substantive allegations as to any discriminatory action taken by Defendants, nor any discriminatory intent behind Plaintiff's arrest or prosecution.  Dkt. No. 10 ¶ 97.  Hawkes does not even identify a protected class to which he claims to belong.  *See Badea v. Cox*, 931 F.2d 573, 577 (9th Cir. 1991) (concluding that equal protection claim failed because, as relevant here, "[p]laintiff [gave] no indication, if he was 'singled out,' that defendants' decision was based on group discrimination").  Hawkes relies solely on a conclusory assertion that his equal protection rights were violated—this is not enough to state a claim for relief.  *See Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*, 2007 WL 4440962, *11 (D. Haw. Dec. 19, 2007) (stating that the complaint was "insufficient to establish that Plaintiff is entitled to relief" where it merely "state[d] in a conclusory fashion that Plaintiff's equal protection rights were violated" but "contain[ed] no facts stating how"), *aff'd*, 303 Fed.Appx. 416 (9th Cir. 2008).

Although Hawkes has given no indication that there is a substantive basis to his equal protection claims, it is conceivable that he could amend his complaint to include one.  Accordingly, the Court grants dismissal as to Hawkes' equal protection claims, without prejudice and with leave to amend.

**b.    Due Process**

The Court's "threshold inquiry in a § 1983 suit" is to "identify the specific constitutional right" at issue.  *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 370 (2017) (internal quotation marks omitted).  "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation."  *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978)).

Hawkes asserts Defendants violated his rights under the Fourteenth Amendment by "subject[ing] [him] to an unreasonable seizure and a deprivation of his liberty interests without due process of law."  Dkt. No. 10 at ¶ 88.    In his opposition, he maintains this Fourteenth Amendment claim, stating that Defendants violated his due process rights by failing to "perform a fair investigation" or acknowledge exculpatory evidence before arresting Plaintiff.  Dkt. No. 47 at 7.  Defendants argue that, to the extent that Plaintiff claims that he was arrested and prosecuted without probable cause, that claim is not properly brought under the Fourteenth Amendment.  Dkt. No. 12 at 11–13.

The Court agrees—the Fourteenth Amendment is not the appropriate vehicle for any claim Hawkes asserts relating to the adequacy of probable cause for his arrest and confinement.  Rather, it is the Fourth Amendment which "establishes the minimum constitutional standards and procedures not just for arrest but also for ensuing detention."  *Manuel*, 580 U.S. at 365 (internal quotation marks omitted).

When a plaintiff alleges that his seizure or pretrial detention was not supported by probable cause, "then the right allegedly infringed lies in the Fourth Amendment." *Id.* at 367. It is only "once a trial has occurred" that "the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support . . . any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* at 369 n.8.

Here, Hawkes' Fourteenth Amendment claims appear to arise from the alleged lack of probable cause for his arrest and subsequent pretrial detention. Hawkes alleges, in fact, that his case was dismissed before trial—meaning that he never suffered a period of post-trial detention in which a Fourteenth Amendment claim might lie. *See* Dkt. No. 10 at ¶ 79. Accordingly, it is the Fourth Amendment, not the Fourteenth, which controls. *See, e.g., Char v. Simeona*, 2018 WL 5815519, at *2 (D. Haw. Nov. 6, 2018) (explaining that a plaintiff's "federal claims regarding his allegedly false arrest and imprisonment arise under the Fourth, not the Fourteenth Amendment"); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that the Fourth Amendment, "not the more generalized notion of 'substantive due process,' must be the guide" for claims of unreasonable seizures and pretrial deprivations of liberty).

The Court therefore grants Defendants' motion to dismiss with respect to Hawkes' Fourteenth Amendment claim challenging the probable cause basis of his

arrest and pretrial detention.[8]  Because amendment of this claim would be futile,

leave to amend is denied, and Hawkes' Fourteenth Amendment claim is dismissed

with prejudice.

## V.    Section 1985 Conspiracy Claim

To state a civil conspiracy claim under Section 1985, a plaintiff must show:

(1) a conspiracy; (2) to deprive any person or class of persons of equal protection of

the laws, or of equal privileges and immunities under the laws; (3) an act by one of

the conspirators in furtherance of the conspiracy; and (4) a personal injury, property

damage or a deprivation of any right or privilege of a citizen of the United States.

*Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

Hawkes alleges that, under Section 1985, Defendants "engaged in a

conspiracy for the purpose of impeding, hindering, obstructing, or defeating the due

course of justice" with the intent of preventing Plaintiff "from exercising legal rights

and protections" guaranteed by federal law.  Dkt. No. 10 ¶¶ 94–95.  Defendants

argue that Hawkes fails to state a Section 1985 conspiracy claim.  Dkt. No. 12 at 13–

14.  For various reasons, the Court agrees.

First, because Section 1985 derives from the Thirteenth Amendment, a

plaintiff must allege "invidiously discriminatory, racial or class-based animus."

---

[8]The Court notes that this ruling does not impact Hawkes' Fourth Amendment claims challenging
his arrest or detention, which Defendants do not presently challenge.  *See* Dkt. No. 10 at ¶¶ 84–
91.

- 17 -

*Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989); *Gillespie*, 629 F.2d at 641. As noted above (*see* Discussion, Section IV(a), *supra*), Hawkes fails to make any nonconclusory allegations of discriminatory actions or intent by Defendants on the basis of his membership in a protected class. Second, "the absence of a [S]ection 1983 [claim] . . . precludes a [S]ection 1985 conspiracy claim predicated on the same allegations." *Caldeira*, 866 F.2d at 1182. Hawkes provides little detail as to the basis of his conspiracy claim, but to the extent that it derives from his Section 1983 equal protection claim, it fails for the same reasons. Third, a conspiracy claim under Section 1985 "must allege facts to support the allegation that the defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1991). The only allegation Hawkes provides is a bald statement that Defendants "engag[ed] in the concerted misrepresentation and omission" of material facts in official police reports. Dkt. No. 47 at 7. Such conclusory remarks fail to provide the factual specificity demanded at this stage of litigation.

In summary, Hawkes fails to provide any of the details necessary to state a Section 1985 claim. It is possible, however, that he could cure this defect. Accordingly, the Court grants dismissal, without prejudice and with leave to amend.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' motion to dismiss, Dkt. No. 12, is GRANTED. Hawkes' claims against the Officer Defendants in their official capacity and Fourteenth Amendment due process claims are dismissed with prejudice and without leave to amend. The Court grants leave to amend all *other* claims dismissed herein, consistent with this Order. Should Plaintiff wish to amend his pleadings, he must file a standalone Second Amended Complaint that does not incorporate or rely on his previous filings no later than January 6, 2026. The failure to timely file a Second Amended Complaint means this action will proceed only on the claims that survive in Hawkes' Amended Complaint (Dkt. No. 10).

IT IS SO ORDERED.

DATED: December 9, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*Beau Hawkes v. Trinidad Alconcel, et al*; Civil No. 25-00229 DKW-KJM;
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**